The first case to be argued today is Jory Strizich v. Mike Batista, and this case is set for 10 minutes per side, but if the advocates need extra time and ask me for it, I'll grant it as a pandemic vote. But if the appellant's counsel, Dr. Christina Davis, wants to make a rebuttal argument, it would be best to stop before your full 10 minutes is up. And we have Ms. Brown, Alison Brown, for the appellee. So why don't we start with the appellant, please. Good morning, Your Honors, and may it please the Court, Christina Davis for Plaintiff Appellant Jory Strizich. I'd like to reserve two minutes of my time for rebuttal. Mr. Strizich raises two arguments on appeal. First, that the District Court erred in dismissing his claim regarding the prison's policy of housing rival gang members together as unexhausted. And second, that he alleged facts sufficient to proceed past the screening stage on both his policy and practice and his failure to protect claims. Both sides are in agreement that to the extent of failure to protect claim based on the June 2013 assault was alleged below, was not properly exhausted. The claims Mr. Strizich is actually proceeding with here, however, first, a claim concerning the September 2015 assault, and second, the claim regarding MSP's policy of housing rival gang members together were fully exhausted. Appellees do not and could not contend otherwise. Therefore, the only disputed issue for this Court to address is whether the lower court properly dismissed these claims during the screening stage for the one this Court applies to pro se prisoner plaintiff complaints in civil rights cases. It did not. As this Court has repeatedly recognized in civil rights cases in particular, a pro se prisoner plaintiff's complaint is to be construed liberally and may be dismissed for failure to state a claim only when it appears beyond doubt that a plaintiff can prove no set of facts that would support their claims and entitle them to release. The lower court plainly In his complaint, Mr. Strizich made clear the serious and obvious risk of harm he, a validated member of the Norteños, faced when placed among members of the Sirenios, a rival gang. Despite more than plausibly alleging MSP's documented awareness of this longstanding violent rivalry and their disregard of Mr. Strizich's repeated pleas for help over the specific risk of harm he faced, harm that was ultimately realized not once but twice, the lower court dismissed his complaint at the earliest possible stage. This was error. As to his claim related to the prison's policy of housing rival gang members together, the lower court held that it failed as a matter of law and relied solely on this court's decision in Lobotod versus Corrections Corporation of America for this proposition. But Lobotod does not stand for such a broad proposition. And more importantly, Mr. Strizich need not allege MSP's policy was a per se violation of the Eighth Amendment in order to state a claim for the wayward indifference. Because Mr. Strizich has more than adequately alleged facts sufficient to support his Eighth Amendment claims, this case should be remanded back to the district court for further proceedings on the merits. Counsel, I hesitate to interrupt your argument, but I do have a question I'd like you to address on the subject you were talking about. As to whether there's a problem that permits a claim, on housing rival gang members together, what is your position if there were 10, let's say there were 10 different gangs active in the prison, would there have to be 10 different facilities? If there was a Russian gang and a Chinese gang, and the two gangs we've got here, do they have to be four facilities? No, Your Honor, I don't think we need to make an argument that would touch on a per se Eighth Amendment violation for all prisons to house any rival gang members together at any time. I think specifically with regard to the facts in this case, the rivalry in this case between the Nortenos and the Sirenios at MSP was longstanding, documented, well known, and well known to be violent at this particular prison. And the prison was actively collecting information regarding this rivalry between the two gangs, because it had persisted for so many years within the specific walls of this prison. Okay, so then is it your position that the prison had to have separate facilities for Nortenos and Sirenios? No, Your Honor, it's not my position that there's any one particular thing that the prison needed to do to keep Mr. Strzic safe. But it is clear from the record before you, even at this early stage, that the prison had at least two options for doing so for keeping Mr. Strzic safe. And they use them at times, but they didn't use them when it came time for another prisoner to assault him. So the first option would be the thing that they were actually naturally doing, which would be to separate the Nortenos and the Sirenios into two separate housing units. I believe HSU-1 was dominated, as Mr. Strzic alleges in his complaint, by Southerners, and HSU-2 was dominated by Northerners. So separating them naturally that way was a way to keep Mr. Strzic safe, and in fact did keep him safe. The second option is actually something that is borne out in the record put together by police. I believe it was in response to one of Mr. Strzic's many housing appeals pleading with the prison to not send him back to the unit dominated by Southerner gang members, which was HSU-1. And in response to his appeal, I believe the appeal actually was to keep him, he was being kept in locked housing and he wanted to be released to the unit that was dominated by members of the gang he was affiliated with, because that would keep him safe. Defendant Lussier actually wrote back to Mr. Strzic that said, we keep you in, and this is at ER-258, we're keeping you in locked housing because we don't want to release you to the gang affiliation activity at issue here, has been the, and this is a quote, STG activity has been the cause of much of the violence that has happened in the general population in recent years. There is a legitimate security reason to segregate inmates who are involved in STG activity from the general population. So there were two options well within the reach of the prison that they were actually and effectively using in this, in reaction to this rivalry between the gang members. One was to keep him in locked housing, and the other was the natural order of the separation of the two gangs between two separate housing units that they had available, let Mr. Strzic take part in that separation. So it's not a matter of globally can all prisons do this. It's a matter of MSP could and did do this. And in this case with regards to Mr. Strzic, they did not manage to keep him safe using either of those two options. So it may be necessary at some point to explore whether or not other options were feasible to MSP, but at least with regard to Mr. Strzic, they had two available options for keeping him safe. And I would next like to turn to. MS. MCDOWELL. Counsel, if I could ask a follow-up question. The factual allegations that support the failure to protect claim for the 2015 attack, are the allegations that support that claim identical to the allegations that support the general practice policy housing claim, except for the fact that Mr. Strzic was attacked? Are there any additional facts that pertain just to the 2015 attack? MS. MCDOWELL. I believe, Your Honor, your question gets at the heart of the matter, which is that the risk posed to Mr. Strzic under both of his Eighth Amendment claims were the same, so it makes sense that the evidence would overlap for both. But in addition to the facts that are being alleged in support of the policy and practice claim, we also have the fact that he was left unsecured and unguarded outside of HSU-1, and that is a critical fact necessary to support the September 2015 failure to protect claim that is not necessarily in support of the global policy and practice claim, although it could be used for both. And I see that my time is running out, so I'd like to reserve the remainder of it for rebuttal, if there are no further questions. MS. MCDOWELL. I did have a further question, if we have a moment to do that. MR. SORENSEN. Yes, go ahead, Ed. MS. MCDOWELL. The attack was by an inmate named Skunk Cap, and it seemed that that kind of came out of the blue, right? The teacher, the plaintiff is waiting for the teacher to come out. He's waiting outside of the unit where he's apparently supposed to be waiting, and the teacher has gone in to get Skunk Cap, and Skunk Cap presumably comes out with the teacher, and it seems as though it's an unprovoked, unanticipated attack under circumstances where there are guards present. Is there anything in that situation, any additional facts that the court should be aware of, the panel should consider? MS. MCDOWELL. Yes, Your Honor. So we would submit that it was a foreseeable result of being placed outside of that unit, unattended and unguarded, that any member of the Serenios could have walked out and beaten Mr. Strzic. That it was inmate Skunk Cap is significant only to the fact that he was attacked for a second time on September 20, 2015. So it's not necessary that Mr. Strzic have alerted the prison that he heard Skunk Cap talking with another inmate about a potential future attack. It's only necessary to allege, as Mr. Strzic has done, that if he were to be in the vicinity of HSC-1 at all, any number of members of the Serenios gang could have attacked him. MS. MCDOWELL. Thank you. MS. MCDOWELL. Thank you, Your Honor. MR. SORENSEN. Okay, and for your planning purposes, we'll give you three minutes for rebuttal, so you can plan for that. MS. MCDOWELL. Thank you, Your Honor. MS. ISLAND-BROWN. Good morning, Your Honor. My name is Island-Brown, and I'm an Assistant Attorney General for the State of Montana. I represent the defendants in this matter. I do briefly want to address, before I get into my main argument, a couple of points that were brought up by Mr. Strzic's attorney. First is the exhaustion issue with respect to the September 2015 claim and Mr. Strzic's claim that the state has not had the opportunity to brief exhaustion, and that's not properly before this court. I also want to just, it seems like Judge Zips got to the issue, but Mr. Strzic is never alleging that he was actually housed in the same unit as members from a rival gang. He was housed at the same custody level. And in his complaint, he claims that Highside Unit 1 and Highside Unit 2 were separated during all mass movements, including Meals Yard, gym, and library, and only interacted during work and treatment groups like school. I also do want to point out that, as Judge Zips noted, there were several correctional officers in the vicinity of the area when Strzic was assaulted in September 2015, and they reacted, according to his complaint, fairly quickly to the events. Getting into my main argument, I have two points today. The first is that, under this court's clearly established precedent, the Eighth Amendment does not require prison officials to per se classify inmates from rival gangs to different custody levels. And the second is that the district court also properly dismissed Mr. Strzic's 2015 failure to protect claim because there is no indication in his complaint that prison officials were aware of facts from which the inference could be drawn that a substantial risk of harm existed to him. In L'Habitat, this court clearly stated it would place an unmanageable burden on prison administrators were they required to separate inmates by gang. In that case, just three days after fighting with a rival gang member, an inmate was assigned to a cell with another member of that gang who then assaulted him, and this court found there was no failure to protect violation in that case. In reaching that conclusion, this court relied on Mayor Olvie Sheehan, which upheld summary judgment based on claims regarding a policy for considering gang affiliation in housing. More recently, and this was not in the briefs, it's a 2020 case from this court that actually came out of the same prison, Montana State Prison, Olvie Kierkegaard. I'll give you the site for that just because it's not in the briefs. 806 Federal Appendix 601. An inmate was placed in a block with rival gang members, and he did not establish that any defendant either knew of or deliberately disregarded an excessive risk to his safety when he was assaulted by one of those rival gang members. That is a memo opinion. I want to point out again that Mr. Strzic here was not in the same cell or even the same unit as an inmate from a rival gang member, or as an inmate from a rival gang. He was housed at the same custody level. So what he's asking for in this case is really quite broader than what the court has already determined is not a constitutional violation in both Labatade and Hall. Labatade controls this case. There's no constitutional violation based on a failure to classify inmates at different custody levels based on their gang membership. Turning specifically to the 2015 assault, I think Mr. Strzic has acknowledged that there are no separate facts that distinguish that assault from his general claim that he should be housed in a separate custody level from an inmate for a rival gang. The District Court properly relied on Farmer B. Brennan in screening out this claim, applying the holding in that case that prison officials must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and must also draw the reference. Here there is no indication that any prison officials inferred or knew of any specific threat to Mr. Strzic. His argument with respect to the 2015 assault is again based solely on his argument that classifying inmates to different custody levels is sufficient to, or not classifying inmates from rival gangs to different custody levels is sufficient to establish Eighth Amendment violations. Mr. Strzic does acknowledge throughout his complaint that he was protected from specific threats when MSP staff were aware of them. For example, MSP staff made housing decisions based on his separation concerns. They at times placed him in protective custody and after bringing concerns of being housed in the high side unit one, he never after that was placed in high side unit one. He was placed in high side unit two. So this court should uphold the District Court screening order. If this court does disagree and sends this back to the District Court, the defendants in this case are clearly entitled to qualified immunity. There is no clearly established case law putting them on notice that they would be liable under the facts of this case. I do want to address one point in Mr. Strzic's reply brief and that is his request that if this court upholds the District Court screening order that allow him the opportunity to amend his complaint. I would submit that that would be futile in this case. Mr. Strzic submitted a complaint and then an amended complaint before this case was screened out and in that screening order the District Court actually told him exactly what was deficient. It said he needed to allege something more than a policy and procedure of housing inmates from rival gangs the same custody level and Strzic then after that filed two amended complaints and neither of them alleged sufficient facts. The District Court already gave him an opportunity he did so twice allowing him to submit a fifth amended complaint in this case would be futile. Since Mr. Strzic appears to have abandoned his exhaustion argument with respect to the 2013 assault, I won't go into that. The District Court did grant summary judgment to the state based on the fact that he had not exhausted his failure to protect claim with that 2013 assault. I do want to point out here there is no claim for injunctive relief in this case. If you look at the complaint even if there was Mr. Strzic has been transferred recently to Connecticut so he's no longer at Montana State Prison any injunctive relief would be nil. So just to conclude real quick this court should uphold the District Court screening order its precedent is clearly on point here. There is no per se constitutional requirement that prison staff house inmates from rival gangs at separate custody levels. There's no allegations since his complaint of any specific threat in 2015 and I do want to leave with one final quote from a U.S. Supreme Court case Rhodes v. Chapman. A prison's internal security is peculiarly a matter normally left to the discretion of prison administrators. If you have no further questions I will be done. Ms. Brown I don't have a question but I wanted to comment that because we're giving Ms. Davis some extra time if you need another two minutes to present argument you should just go ahead. Thank you. I think I've said all I need to say today but I appreciate it. Okay thank you. Now Ms. Davis we're putting three minutes on the clock for rebuttal and we're interested in hearing your responses. Thank you your honor. A few responses to what my friend on the other side has just said. So I want to take the Labrador argument first. That case does not stand for the proposition that there is no claim to be stated for a per se violation of the Eighth Amendment by housing rival gang members together. Labrador merely holds on the Eighth Amendment side there's also a holding about a brand notice in that case that the plaintiff in that case despite proceeding to discovery failed to allege facts sufficient to support the claim that housing that person in a cell with the gang member violated the Eighth Amendment. But Labrador is different from this case on a number of factual levels the first of which being that plaintiff in that case never even alleged there was a rivalry to begin with much less that the prison in that case had knowledge of the existence of that rivalry. So plaintiff in that case proceeded to discovery and then failed to even outright allege that there was a rivalry at the prison much less that it presented a problem to that person. Whereas here Mr. Strizic and his complaint from ER 687 to ER 696 and elsewhere at ER 7701 includes a near anthropological recounting of the violence at MSP stemming from this known rivalry between the Norteños and the Sereños. And again in Labrador the factual support was deficient there had been one proceeding attack on that plaintiff or attack not attack an incident and plaintiffs and the person involved in that incident both indicated and reported to the prison that it was not at all gang affiliated. So the prison had no notice up until the one precipitating attack that happened in the cell where he was housed that this plaintiff was at all subject or a target for gang violence. So I would say that Labrador is not relevant to this case legally and factually. It only goes to show how Mr. Strizic has made a more than adequate statement of facts giving rise to his Eighth Amendment claims here. He's detailed the violence at MSP between these two prisons. He has sufficiently alleged that defendants like defendant Reich, Hess and Napier were not only aware of the fact that he was going to be attacked on a specific day and this is referring to the June 2013 incident but that they took no steps to mitigate that harm and instead reported after the fact that he they knew he was going to be attacked that day and just didn't know who was going to do the attacking. With that knowledge they could have placed him in locked housing they could have placed him under further security there were any number of things they could have done other than wait and see who was going to do the attacking. He also alleges throughout his complaint unlike the plaintiff and Labrador that he expressed his concerns about being did do several times through memos and informal conversations with defendants. Thank you your honor I see my time has expired for the foregoing reasons the district court's judgment should be reversed. Thank you. Hey Ms. Davis I have one further question and I realize I'm taking you past your expired time but I think it's okay. There's a Supreme Court case I thought it was Farmer v. Brennan. I thought it said that if prison officials act reasonably to protect someone and then harm still occurs that they're not liable. Now I may be it's oversimplifying but that was what I got out of it. So my question here is specifically why do you contend the prison didn't act reasonably in its actions? Thank you for the question your honor. So Farmer v. Brennan also says that a prison has a duty to protect inmates from violence by other inmates. So the same decision it imposes an affirmative duty for a particular prison to protect its inmates and that's because there is no other option for inmates. But in this case specifically the inmates Mr. Strzich alleges throughout his complaint were repeatedly informed of the violence that Mr. Strzich was a target of and instead of moving him or doing any number of things they could have done to protect him they instead ignored his pleas reclassified him to be sent back to the housing unit that would present him the risk of harm and then he had to advocate for you'll see them say yes we acknowledge that you have you face this particular risk of harm because of your STG affiliation which is the terminology that they use but we are still going to place you in this housing unit so he would appeal that decision and then inevitably stop that decision from happening or he would as happened in in this case he would find other accommodations so he was sent to a treatment facility that was outside of MSP and so through that he was able to avoid to avoid the very substantial risk of harm okay thank you miss davis thank you for answering my question unless uh judge ships or judge ronaldson have other questions to pose we will now submit this case and the parties will hear from us in due course
judges: GOULD, RAWLINSON, Zipps